UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
──────────────────────────────────────x

MARCUS THORPE,

        Plaintiff,

 -against-                                       19 Civ. 5995 (CM)

CITY OF NEW YORK, et al.,

        Defendants.

──────────────────────────────────────x

# DECISION AND ORDER DISPOSING OF THE PARTIES' CROSS-MOTIONS FOR DEFAULT AND TO VACATE ENTRY OF DEFAULT AGAINST SERGEANT TYRONE JOSEPH

McMahon, J.:

      This case is set for trial on September 12, 2022. It has proceeded through discovery and extensive motion practice, which resulted in the dismissal of a large number of parties and claims. *See Thorpe v. City of New York*, No. 19-cv-5995, 2021 WL 3811238 (S.D.N.Y. Aug. 25, 2021).

      One of the great mysteries of this case (at least, one of the great mysteries to this Court) was the whereabouts of one of the key actors in Mr. Thorpe's drama, Sergeant Tyrone Joseph of the Harlem Hospital Police ("Sgt. Joseph"). Per the Statement of Undisputed Facts in the Court's decision on the Defendants' motion for summary judgment, Sgt. Joseph accompanied Plaintiff and the principal individual Defendant, Officer Senajor, as the two officers evicted Plaintiff from the room of a patient, Mildred Diaz, long after visiting hours were over. Per Plaintiff's version of events (the only one that matters at the moment), Officer Senajor behaved in a threatening manner while the three men were taking the elevator from the eleventh floor of Harlem Hospital to the lobby, to the point that his colleague and superior officer, Sgt. Joseph, actually tried to calm Officer Senajor down. Once the elevator reached the lobby, Plaintiff – who admitted that he was "irate," "extremely upset" and "pretty hot" – walked backward toward the exit, facing the officers and directing what appear to be hostile comments in their direction (as noted in the summary judgment opinion, while there is video of all of the above, there is no audio). This led to a physical altercation between Officer Senajor and Plaintiff, the result of which was an injury to Plaintiff's left eye, inflicted by Officer Senajor's baton. Those facts are undisputed. Whether that injury was inflicted without provocation or in self-defense is the key issue to be tried in this case.

      Sgt. Joseph was not named as a Defendant in the original complaint in this action, which was filed on June 26, 2019. The original complaint describes Sgt. Joseph instead as "NYCHHC Police Officer John Doe 1" or "P.O. JD1." This particular "John Doe" Officer was alleged to have

approached the Plaintiff in the hospital room to ask him to leave, escorted him out, and witnessed the altercation between Officer Senajor and Plaintiff. As his identity was unknown, Plaintiff's counsel did not seek the issuance of a summons as against Sgt. Joseph, and there is no indication on the docket that he was in fact ever served with the original complaint.

A first amended complaint was filed on December 6, 2019. Sgt. Joseph was not named as a Defendant in that pleading. Instead, the "John Doe" officer was identified as another of the defendants, Officer Cardona.

However, on January 7, 2020, Plaintiff's attorney, Devon Radlin, Esq., sought leave to further amend the complaint, which the Court allowed on the condition that it be done quickly. On January 8, a Second Amended Complaint was filed; it added Sgt. Joseph as a party defendant. This time, the allegations previously alleged to have been done by Officer Cardona (*i.e.*, approaching the Plaintiff, escorting him out, and witnessing the altercation) were alleged to have been done by Sgt. Joseph. Sgt. Joseph was not alleged to have inflicted any physical injury to Plaintiff and was not alleged to have personally participated in Plaintiff's arrest or prosecution.

This time, Plaintiff's counsel obtained a summons addressed to Sgt. Joseph. On January 23, 2020, it was served in the following manner: delivered to his usual place of business (Harlem Hospital) as provided in N.Y. C.P.L.R. 308(2). The summons and complaint were left with a co-worker of the Sergeant's, after which a copy was mailed to Sgt. Joseph c/o Harlem Hospital Police, 506 Lenox Avenue, New York, New York. Proof of service was filed with this Court on February 17, 2020 – four days beyond the twenty days within which proof of service could be filed per CPLR 308(2). At that time Sgt. Joseph was out of work on an extended medical leave, but there was no way for Plaintiff to have known that.

Notwithstanding the fact that Plaintiff failed to comply strictly with the requirements of CPLR 308(2), the City, the person of Corporation Counsel, did not point out to the Court that Sgt. Joseph had not been properly served. Instead, it asked this Court to postpone the due date for Sgt. Joseph to answer the complaint, on the ground that the Sergeant was out of work on extended medical leave. The City claimed to be having difficulty getting in touch with him so that he could complete the requirements for requesting municipal representation.[1] The City did not indicate that there was any reason to believe that Corporation Counsel could not represent Sgt. Joseph – a matter about which it routinely advises the Court when there is the slightest question about representation.

The Court extended the Sergeant's time to answer at the City's request, and then did so again, until March 25. Although I indicated that there would be no additional adjournments (Docket #61), by March 25, we were at the beginning of the COVID crisis, which led this Court to enter an order in all civil cases extending pre-existing deadlines for 75 days – which extended Sgt. Joseph's time to answer until June 8, 2020. *See In Re Scheduling of Civil Matters in Cases Pending Before The Hon. Colleen McMahon in View of the Coronavirus Pandemic*, entered May 8, 2020. In all events, this Court (like many of my colleagues) took taken a very lenient attitude toward deadlines, as it was obviously impossible for lawyers to meet them. And in most of my cases, lawyers contacted the Court and made appropriate arrangements.

---

[1] The City claims that it made two such requests, but this Court has not found any record of a "first" request for an extension of time for Sgt. Joseph – only a "second" request, which is found at Docket No. 55.

The COVID crisis obviously exacerbated Corporation Counsel's difficulty getting ahold of Sgt. Joseph. However, I must observe that the Law Department became effectively dysfunctional for many months during the COVID crisis; little if anything got done on any of my many cases involving the City of New York during that period. The Law Department admits that it did not get in touch with the Sergeant (it uses the phrase "unable to contact"), in order to explain to him that he needed to fill out certain forms in order for the City to appear on his behalf.[2] As a result of the Law Department's inability to contact him, Sgt. Joseph never submitted the requisite forms, leading someone at Corporation Counsel's office to reach the unsupportable and utterly illogical conclusion that he did not want representation. And because of the disarray in the Corporation Counsel's office, no City lawyer did anything to protect the Sergeant's interests so he could procure private counsel – something that City lawyers routinely do when they cannot represent a party employed by the City of New York.

But the City Law Department was not the only negligent party here. Of equal or greater significance, Plaintiff's counsel did not make any effort either to force Sgt. Joseph into the lawsuit or to default him. Discovery and motion practice proceeded in Sgt. Joseph's absence. Neither side noticed his deposition, though everyone knew that he was present when Officer Senajor hit Mr. Thorpe with his baton and so had important evidence to give in his status as a percipient witness, regardless of his status as a party to the lawsuit. And when the City filed motions for summary judgment on behalf of all the other Defendants, Plaintiff did not obtain a certificate of default and cross move for a default judgment against Sgt. Joseph.[3]

In short, all parties behaved as though the Sergeant were of no real relevance to this case. Frankly, it appeared to the Court that the claims against him had been abandoned – they certainly were not being pursued – and no one on either side of the caption ever said or did anything to suggest otherwise. That is why, at the end of my extensive August 25, 2021, opinion disposing of the various motions for partial summary judgment (Docket #109), I noted that Sgt. Joseph's status vis-a-vis this case was "unclear" (a serious understatement) and directed the parties to address the issue. (Docket #109, n.1). All parties ignored my request. I concluded that my supposition about abandonment had been correct.

Once the summary judgment motions had been decided the Court requested trial dates for the case (under our emergency centralized scheduling procedures, judges could not set firm dates for jury trials but had to go through a centralized process – a form of "master calendar" not seen in this district for many decades – in order to minimize the number of jurors who were brought in for selection on any given day). Through this procedure, I obtained a February 24, 2022 trial date. The parties asked for additional time to try to work out a settlement and file pre-trial papers. No one mentioned any issue with Sgt. Joseph or behaved as though the claims against him were in fact still alive.

---

[2] This Court is more than familiar with the record in this case, and there is not the slightest possibility that some "conflict of interest" between Sgt. Joseph and the other Defendants would have prevented the Law Department from representing the Sergeant.

[3] Plaintiff applied for a certificate of default, but the Clerk rejected the papers as deficient and Plaintiff never cured the deficiencies. (*See* Docket #86, 88, 90, 91). A certificate of default did not issue at that time.

I granted this one adjournment. The parties were unable to settle, so as soon as the Court was able to calendar its own jury trials, I gave them a jury selection date of September 12, 2022.

And so, we come to today's cross motions.

Six and a half months after the summary judgment motions were decided, new co-counsel appeared for Plaintiff, one Vikrant Pawar, Esq. Mr. Pawar immediately did what his co-counsel had been unable to do properly at an earlier time; he demanded a certificate of default from the Clerk of Court for Sgt. Joseph. There was an affidavit of service on file for Sgt. Joseph and no answer, so the Clerk of Court issued the Certificate of Default (a purely administrative procedure that does not entitle a plaintiff to the entry of a judgment, but that must precede any request for the entry of judgment – Fed. R. Civ. P. 55).

On April 7, 2022, Mr. Pawar finally filed a motion for a default judgment against Sgt. Joseph. (Docket #153, 154). Because defaults are highly disfavored, this Court follows the unusual – but (I think) salutary – practice of requiring that such motions be served on the defaulting party in the same manner as a summons. I do this in order to smoke out cases in which a party had no intention of defaulting, and perhaps was never even served – which happens more often than might be imagined.

In this case, my rule forced caused Mr. Pawar to serve the motion, not only on counsel of record, but on Sgt. Joseph personally – which he did by leaving a copy of the motion papers with his wife at the Sergeant's home address (Mr. Pawar seems to have had no trouble locating that address). (Docket #154-3). The delivery of this motion alerted poor Sgt. Joseph to the fact that something dreadful was about to happen to him through no fault of his own. According to the affidavit of service that was filed by Mr. Pawar's process server, Sgt. Joseph immediately reached out to Mr. Pawar. (*Id.*). He also contacted the Corporation Counsel, which office now had to figure out a way to undo its earlier mistake of not conducting proper follow-up about representation with a disabled police officer who was out on medical leave when this lawsuit was commenced (and who eventually retired on account of that disability).

The Law Department filed a belated notice of appearance on behalf of Sgt. Joseph (Docket #115) and moved to vacate the certificate of default, principally on the ground that service had not been properly effected (that four day delay in filing an affidavit of service with the Court being the impropriety). The City also argued that he had meritorious defenses, in that the complaint failed to state any claim against him and urged that his default was not willful. (*See* Docket #160).

Plaintiff opposed the City's motion. (Docket #168).

**The Motion for Default Judgment is Denied; the Motion to Vacate the Default is Granted**

Even when a party fails to respond to a complaint, a plaintiff is not entitled to a default judgment as a matter of right. He bears the burden to demonstrate that the uncontroverted allegations of the complaint are sufficient to establish the defendant's liability on each asserted cause of action. As a result, a court must analyze the allegations of the complaint in order to decide

4

whether the elements of each claim for which Plaintiff seeks damages have been adequately pleaded for purposes of establishing the liability of a particular defendant. *See Francis v. City of New York*, No. 15-CV-7997 (VSB) (KHP), 2019 WL 8918743, at *4 (S.D.N.Y. Nov. 12, 2019), *R.&R. adopted* 2020 WL 2792995 (S.D.N.Y. May 29, 2020) (citing *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)).

Moreover, a court may set aside the entry of a certificate of default for good cause. In deciding whether to vacate a default, the court must determine whether the default was willful, whether the defendant demonstrates the existence of a meritorious defense, and whether and to what extent vacating the default will prejudice the non-defaulting party. *S.E.C. v. McNulty*, 137 F. 3d 732, 738 (2d Cir. 1998).

In this case, there is every reason to vacate the default and no reason at all to enter a default judgment against Sgt. Joseph.

As noted above, Sergeant Joseph's time to answer expired on June 8, 2020, by standing order of this Court. I have been extremely lenient about deadlines during the COVID crisis – I certainly was not enforcing them in 2020 – but technically, he has been in default since that date. Nonetheless, Plaintiff is not entitled to a default judgment, because the City is correct when it asserts that Plaintiff has not even begun to meet his burden of demonstrating that the uncontroverted allegations of the complaint show that Sgt. Joseph is liable on the various claims asserted against him.

Thorpe's motion for entry of a default judgment is not accompanied by any evidence, or even by any brief; and his discussion of the issue in the memorandum of law filed in opposition to the motion to vacate the default is virtually non-existent. The one thing that Thorpe's counsel does do in that brief is concede that he has failed his client in this regard: "The City argues that plaintiff has not proven the elements of the claims against [Sgt. Joseph]. *True.* But Joseph defaulted." (ECF No. 168, at 1) (emphasis added). Plaintiff's counsel seems to be unaware that he cannot simply rest on the default but must demonstrate that he actually has a case against Sgt. Joseph that would entitle his client to relief. He has utterly failed to do so, as the admission ("True") establishes. This alone dooms his motion for entry of a default judgment.

Moreover, the City's motion to vacate the default, read together with the Court's previous decision on the motions for partial summary judgment made by the other Defendants, demonstrates that Plaintiff could not possibly have met his burden had he tried to do so. Indeed, assuming there was a default, the City's Rule 55(c) motion is meritorious and should be granted.

Foremost among the reasons why is that Sgt. Joseph can demonstrate the existence of a meritorious defense to every claim asserted against him. He was named as a defendant on seven of the ten causes of action in the Second Amended Complaint. He has meritorious defenses to all of those claims; indeed, had he been a participant in the case, all but one of them would have been dismissed when the Court decided the partial summary judgment motions:

The first cause of action, for negligence, was dismissed as against all other Defendants on the ground that Plaintiff could not pursue both a negligence claim and an excessive force claim

5

predicated on the same intentional conduct. That same reasoning would have compelled dismissal of the First Cause of Action as against Sgt. Joseph.

As to the fifth cause of action, for excessive force, the complaint fails to allege that Sgt. Joseph applied any force whatever to Plaintiff – he is not even alleged to have touched him – so obviously the Sergeant has a meritorious defense to that claim.

The exact same reasoning compels one to conclude that the Sergeant has a meritorious defense to the Seventh Cause of Action, for assault and battery – since there is no allegation that he either assaulted or battered Plaintiff.

As to the eighth cause of action, for malicious prosecution, that claim – which was dismissed against Defendants Britto, Senajor and Cardona – would have to be dismissed as against Sgt. Joseph for the same reason: there is no allegation in the complaint (or any evidence on the summary judgment record) that the Sergeant either executed the criminal court complaint (Officer Cardona did, and did so with probable cause), testified at any hearing or grand jury proceeding (Officer Senajor did that), or took any action to encourage the prosecutor to go forward with the case.

The ninth cause of action, for conspiracy, was dismissed on summary judgment as against all other Defendants on the ground that there was no view of the evidence to support it; Sgt. Joseph could rely on the same argument to obtain dismissal of the claim as against him.

The tenth cause of action, for false arrest, also can be met with a meritorious defense, since Sgt. Joseph did not arrest Plaintiff – Officer Cardona did. This claim was dismissed as against Lt. Britto and Officer Senajor for the same reason.

In short, had Sgt. Joseph been treated like a party to this lawsuit, six of the claims asserted against him would have been dismissed at the summary judgment stage.

This leaves the sixth cause of action, for failure to intervene and stop the assault that was admittedly perpetrated by Officer Senajor. The Court would not have granted a motion by Sgt. Joseph for summary judgment dismissing this claim, because there is a genuine issue of fact as to whether the Sergeant was in a position to stop Officer Senajor before he hit Thorpe with his baton (for the same reason this claim was not dismissed as against Officer Cardona). However, that does not mean Sgt. Joseph does not have a potentially meritorious defense to this particular claim; he actually has two. First, assaults happen very quickly, and it is quite possible that neither Sgt. Joseph nor Officer Cardona was realistically in a position to stop Officer Senajor from hitting Thorpe with his baton. Second, it is also possible that Officer Senajor was acting in self-defense; if he was, that would eliminate any possibility of liability for failure to intervene.

So it seems clear enough that Sgt. Joseph will be entitled to dismissal of nearly every claim asserted against him, and quite possibly will prevail on the merits of the one claim that actually will be litigated on the merits. The existence of meritorious defenses counsel strongly in favor of vacating his default.

The City satisfies the other two factors that must guide a court in deciding whether to vacate a default.

After reviewing the record, I am convinced that Sgt. Joseph did not willfully default but was the victim of the inability of the Corporation Counsel's office to function appropriately during the COVID crisis. However, even if his default were willful, the existence of meritorious defenses would overcome that factor.

Finally, vacating the default will not prejudice Plaintiff. He had every opportunity to demand that the Court set a new answer date for Joseph and he could have noticed the Sergeant's deposition, whether or not the Sergeant was a party. He also could have obtained a certificate of default far earlier than he did (his abortive effort at doing so in 2020 was never corrected). Plaintiff, through his counsel, chose not to involve Sgt. Joseph in this lawsuit. He is quite properly hoisted on his own petard.

So, this Court concludes that the certificate of default should be vacated, and Plaintiff's motion for entry of a default judgment should be denied because Plaintiff abdicated his responsibility to demonstrate that he was entitled to any relief as against the Sergeant.

Where does that leave us?

Sgt. Joseph is now a party. The City has appeared on his behalf. Corporation Counsel is directed to respond to the complaint by filing an answer on his behalf (which may be a general denial) no later than Friday, August 12, 2022.

Discovery is closed and will not be reopened in order to accommodate the sudden appearance of Sgt. Joseph. Both sides were at fault in not paying any attention to him, and we are not delaying the trial of this case for one second because he is suddenly a party.

This means that neither side may depose Sgt. Joseph prior to trial. That is only fair. Both sides had every reason to depose Sgt. Joseph while discovery was open – he was a percipient witness to the events at the center of this lawsuit – and both sides failed to notice his deposition. As a result, both sides have forfeited their right to depose him now. He will almost certainly have to be called to testify (the Court deems him added to the witness lists filed by both parties); that will be the first time anyone hears him testify.[4]

Sgt. Joseph will go on trial in this case on September 12 along with everyone else. There is no prejudice to him in requiring him to go to trial on short notice, as he will have the full benefit of the extensive discovery that has already been taken by his counsel (the City Law Department). His co-defendants had every incentive to explore all the facts relevant to his defense, and this Court cannot imagine what additional discovery the City would have taken had he been properly in the case from the beginning. And, of course, Sgt. Joseph will have the opportunity to tell his side of the story at the trial. Unfortunately, it is too late for him to make a motion for summary judgment, so he will be on trial on every claim against him – even those that I have said would have been

---

[4] Obviously, the Law Department may prepare its client to give testimony at the trial. Sgt. Joseph may speak to Plaintiff's counsel if he wishes to do so, but he is under no obligation to do so. They had their chance.

7

dismissed had he made a motion for summary judgment. But he didn't, so Plaintiff must either drop the claims that are likely doomed or put on evidence to support them. No one should be surprised if all but one of the claims against Sgt. Joseph are dismissed on a directed verdict motion at the close of Plaintiff's case. But any such decision is premature today; we must see how the evidence comes in.

For the avoidance of doubt, the trial will not be rescheduled in light of this decision; discovery will not be reopened. I trust that this is clear.

This constitutes the decision and order of the Court; it is a written decision disposing of the motions at Docket Numbers 153, 154, 159, and 163. The Clerk of Court should remove those motions from the Court's list of active motions.

Dated: July 28, 2022

_____
U.S.D.J.

BY ECF TO ALL PARTIES